

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 15, 2024

**VIA ECF**
Honorable John P. Cronan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

>    Re:   *United States v. Herman Calvin Brightman, a/k/a "Nazir Griffiths," a/k/a "Nazir Luckett,"* 23 Cr. 642

Dear Judge Cronan:

The Government respectfully submits this letter to oppose defendant Herman Calvin Brightman's request for temporary release to attend the funeral of his father on March 22, 2024.

Although the Government certainly sympathizes with the defendant and the defendant's family on the passing of the defendant's father, temporary release into the community would pose far too great a risk of danger to the community and flight by the defendant, and should be denied. As an alternative, the Government has had success in the recent past allowing inmates to attend the funerals of loved ones by videoconference. The Government is of course willing to use its best efforts to facilitate the defendant's remote attendance.

Background and Legal Standard:  On December 7, 2023, a Grand Jury in this district returned an eight-count indictment charging the defendant offenses relating to the kidnapping, assault, and intimidation of four victims and one minor victim over the course of just over two years. Because the defendant was charged with kidnapping a minor, for which the defendant faces a mandatory minimum sentence of 20 years' imprisonment with a maximum of life imprisonment, *see* 18 U.S.C. § 1201(g), "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of [the defendants] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E).

The defendant still has not rebutted that presumption.

Safety of the Community:  The defendant poses a significant risk of danger to the victims in this case. The charged conduct is extremely serious, involving the kidnapping of four women and one minor child. As described in the Indictment, the defendant assaulted and attempted to strangle these women, sometimes in their own homes, repeatedly demonstrating his willingness and capacity to use violence. For example, the defendant threatened Victim-1 at knifepoint to force Victim-1 and her sleeping child, Minor Victim-1, to travel with him from New York to New Jersey; he held a knife to Victim-2's side and threatened to "gut" her "like a fish"; he attempted to

strangle Victim-3 by putting her into a chokehold and using his other hand to cover her mouth and nose; and he strangled Victim-4 and repeatedly told her that he was going to kill her.

In addition to the brutality of the defendant's actions, his past behavior has also demonstrated that an arrest and filing of criminal charges are not sufficient to deter him from future criminal conduct. The defendant was arrested after each of the events. Yet the defendant continued to prey upon woman after woman, all the while piling up arrests and open state charges. Criminal history records reflect that the defendant has been arrested 29 times since September 2017.

Moreover, the risk that the defendant would seek to intimidate or otherwise harass the Victims is all too real in this case. In the weeks and months after Victim-2 broke up with the defendant after he had kidnapped and attacked her, the defendant continued to harass Victim-2 by calling her from his cellphone, using a private number, and asking others, such as Victim-3, to call Victim-2 in the middle of the night. Days after the defendant attempted to strangle Victim-3, the defendant appeared in the vicinity of Victim-3's workplace to ask Victim-3 whether she had reported him to the police, going so far as to stalk her by following her home and assaulting her on the street. More egregiously, while building security officers detained the defendant after his attack on Victim-4, the defendant continued to text Victim-4, repeatedly pleading with her not to press charges.

The defendant's tendency to continue to contact and harass his victims is even more dangerous because he is familiar with all of the victims, whom the defendant was dating or attempting to date. For example, the defendant dated Victim-1 and Victim-2 for months. The defendant knew their cellphone numbers, had repeatedly been to their homes, and was familiar with their places of work. Moreover, although the Government has endeavored to maintain the safety and anonymity of the Victims for now, we understand that the defendant may have access to the names and other personal information of each of the Victims through discovery obtained through the local prosecutors.

Risk of Flight: Second, the defendant poses significant flight risk. As noted above, the defendant faces a mandatory minimum term of 20 years if he were to be found guilty of the charges in the Indictment. Contrary to the defendant's insinuation that the evidence is not strong because of a plea that was extended by one local prosecutor,[1] the evidence here consists not only of witness testimony, but also of records that corroborates the witnesses' accounts, including text messages, recordings of phone calls, videos, and cellphone location information.

Insufficiency of the Proposed Release Conditions: The defendant's proposed temporary bail package does not rebut the presumption here that no combination of conditions can reasonably

---

[1] Although it is the Government's position that plea offers, particularly ones extended by another prosecuting agency, are rarely an accurate proxy for the strength of the prosecution's case, that is particularly true here, where the Government's case encompasses and far exceeds the purview of any one individual state case.

assure the safety of the community, including the victims, and to reasonable ensure the defendant's appearance at future court dates.

First, although conditions of financially responsible cosigners, third-party custodians, and electric monitoring may provide some deterrent value for some defendants in some circumstances, where a defendant's incentive to flee is significant—as it is the case here—none of these conditions can prevent the defendant from fleeing. Indeed, as the Court may be aware, acting on judgments from forfeited bonds against cosigners with limited financial means can be difficult, and, in any event, close family and friends may be willing to accept the financial consequences in order to "buy" the defendant's freedom from potentially more than 20 years in prison. The concept of a third-party custodian sounds impressive, but the Government is also unaware of any enforcement mechanism attached. Finally, electronic monitoring does only that—monitor. Plenty of defendants in this District have cut off ankle monitors to flee.

Second, the defendant can "flee" and not appear for future court dates simply by disappearing into the community. He need not go far to escape re-arrest. And there is particular risk of that here, where the defendant has been adept at creating false identities for himself. For example, for a year the defendant went by his alias "Nazir Griffiths," with fake jobs and fake IDs. There is every reason to think that the defendant can put those same deceptive skills to use to remain under the radar.

Third, as stated above, there is significant risk that the defendant, while he is out, will attempt to intimidate or otherwise harass the Victims in this case—people with whose intimate details he is familiar. This witness intimidation could be accomplished by simply using someone else's phone to call any of the Victims and/or their families. Based on the Government's review of the defendant's jail calls, the defendant has enlisted family members in the past to track down and contact women on the defendant's behalf.

Accordingly, for the reasons set forth above, the Court should deny the defendant's request for temporary release.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: \_/s/_____
Ni Qian/Patrick Moroney
Assistant United States Attorneys
(212) 637-2364 / -2330

The Government is directed to confer with the Bureau of Prisons about the possibility of having Mr. Brightman attend the funeral remotely via videoconference. The Government shall file a status letter by March 19, 2024 at 5:00 p.m.

SO ORDERED.
Date: March 15, 2024
New York, New York

_____
JOHN P. CRONAN
United States District Judge