UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
UNITED STATES OF AMERICA,                               :
                                                        :
                -v-                                     :          23 Cr. 642 (JPC)
                                                        :
HERMAN CALVIN BRIGHTMAN,                                :          OPINION AND ORDER
                                                        :
                                Defendant.              :
                                                        :
------------------------------------------------------- X

JOHN P. CRONAN, United States District Judge:

Defendant Herman Calvin Brightman is charged in an eight-count indictment in connection

with, *inter alia*, allegedly kidnapping multiple victims, including a knifepoint kidnapping of a

mother ("Victim-1") and her two-year-old child ("Minor Victim-1"), over an approximately

sixteen-month period from July 2022 through September 2023. Dkt. 2 ("Indictment"). Specifically,

Brightman is charged with kidnapping Victim-1 and Minor Victim-1 from July 20, 2022 to July 21,

2022,[1] in violation of 18 U.S.C. § 1201(a)(1), (g)(1), Indictment ¶¶ 21-23 (Count One); threatening

physical harm by interstate communications to another woman ("Victim-2") on August 14, 2023,

in violation of 18 U.S.C. § 875(c), Indictment ¶¶ 24-25 (Count Two); cyberstalking Victim-2 from

August 13, 2023 to August 14, 2023, in violation of 18 U.S.C. § 2261A(2)(B), Indictment ¶¶ 26-

27 (Count Three); kidnapping another woman ("Victim-3") on September 6, 2023, in violation of

18 U.S.C. § 1201(a)(1), Indictment ¶¶ 28-29 (Count Four); travel in interstate commerce to commit

a crime of violence against Victim-3 on September 6, 2023, in violation of 18 U.S.C. § 2261(a)(1),

Indictment ¶¶ 30-31 (Count Five); travel in interstate commerce to stalk Victim-3 on September

11, 2023, in violation of 18 U.S.C. § 2261A(1), Indictment ¶¶ 32-33 (Count Six); kidnapping

---

[1] All dates contained in this Opinion and Order are alleged in the Indictment to be approximate dates.

another woman ("Victim-4") on September 28, 2023, in violation of 18 U.S.C. § 1201(a)(1), Indictment ¶¶ 34-35 (Count Seven); and travel in interstate commerce to commit a crime of violence against Victim-4 on September 28, 2023, in violation of 18 U.S.C. § 2261(a)(1), Indictment ¶¶ 36-37 (Count Eight).

Brightman was taken into federal custody on these charges on December 11, 2023, on which date he appeared before the Honorable Barbara C. Moses.  After a lengthy bail argument, Judge Moses ordered Brightman detained pending trial based on danger to the community and risk of flight grounds.  Dkt. 6.  Brightman pleaded not guilty to the eight Counts of the Indictment before this Court on December 13, 2023, Dkt. 11, and the next pretrial conference is scheduled for April 15, 2024, at 11:30 a.m.  He currently is detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.

On March 14, 2024, Brightman made an application to the Court for temporary release from custody to attend his father's funeral on March 22, 2024.  Dkt. 16 ("Deft. Mot.").[2]  In making this request, Brightman proposes his release on "freestanding GPS-enabled location monitoring" to attend the funeral.  *Id.* at 1.  The conditions he proposes entail: (1) prior to his temporary release on March 22, 2024, Brightman would sign a personal recognizance bond co-signed by his mother and brother, surrender his passport, and be fitted with freestanding GPS location monitoring at the U.S. Courthouse in Central Islip, New York; (2) after those conditions are met, Brightman would be released to his brother as a third-party custodian and driven directly to the location of the funeral service, with his route being provided in advance to the U.S. Marshals Service; and (3) Brightman would return to the Central Islip courthouse by 4:00 p.m. on March 22, to surrender to Marshals' custody and return the monitoring equipment.  Deft. Mot. at 2-3, 5.

---

[2] Brightman's letter motion was filed on the public docket with certain redactions. Brightman's counsel has provided the Court and the Government with an unredacted version of that letter, which the Court has reviewed as well.

On March 15, 2024, the Government opposed the request, arguing that Brightman has not rebutted the presumption under 18 U.S.C. § 3142(e)(3)(E) for release.  Dkt. 18 ("Govt. Opp.").  The Government argues primarily that Brightman "poses a significant risk of danger to the victims in this case," pointing to the alleged conduct, and that he "poses [a] significant flight risk," pointing to the sentencing exposure and strength of the Government's proof.  *Id.* at 1-2.  The Government further argues that Brightman's proposed temporary release conditions do not rebut the presumption that no condition or combination of conditions can reasonably assure the safety of the community or reasonably ensure his appearance at future court appearances.  *Id.* at 2-3.  In its opposition letter, though, the Government offered "to use its best efforts to facilitate the defendant's remote attendance" at the funeral.  *Id.* at 1.  Yesterday, however, the Government reported back after consulting with the legal staff at the MDC.  Dkt. 20 at 1.  Unfortunately, the legal staff at the MDC advised the Government that, "although the MDC has the technological capacity for setting up a videoconference, as a matter of policy, the MDC does not permit inmates to attend funerals by videoconference."  *Id.*  Later yesterday evening, Brightman's counsel submitted another letter, continuing to argue for temporary release, but also alternatively proposing Brightman's production to a location where he could view the funeral remotely with counsel.  Dkt. 21.

The Court begins with whether Brightman should be temporarily released for purposes of attending his father's funeral.  The question essentially is whether his bail should be modified to allow for that release.

Under the Bail Reform Act, the Court must impose the least restrictive condition or combination of conditions that would reasonably assure the appearance of the defendant as required and the safety of any other person and the community.  18 U.S.C. § 3142(c)(1)(B).  This analysis considers factors that include the nature and circumstances of the offense, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and

seriousness of the danger to any person or the community that would be posed by the defendant's release.  *Id.* § 3142(g).  For pretrial detention to be ordered under the danger to the community prong, the Government must prove by clear and convincing evidence that the defendant presents a danger to the community.  *See United States v. English*, 629 F.3d 311, 318 (2d Cir. 2011); *see* 18 U.S.C. § 3142(f)(2).  To establish pretrial detention on risk of flight grounds, the Government "retains the ultimate burden of persuasion by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight."  *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (citations omitted).

In addition, Section 3142(e)(3) provides for a rebuttable presumption when a judicial officer finds there to be probable cause that the defendant committed certain charged offenses.  Such offenses include "an offense involving a minor victim under section 1201" of Title 18, 18 U.S.C. § 3142(e)(3)(E), which is the offense charged in Count One of the Indictment, *see* Indictment ¶¶ 21-23.  Under Section 3142(e)(3), subject to rebuttal, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  18 U.S.C. § 3142(e)(3).  The grand jury's return of the Indictment charging Brightman with committing Count One (as well as the other seven Counts) demonstrates that probable cause exists that he committed the offense of kidnapping with a minor victim, in violation of 18 U.S.C. § 1201(a)(1), (g)(1).  Thus, the presumption under Section 3142(e)(3) is triggered.

The Court concludes that the Government has met its burden of establishing, by clear and convincing evidence, that no condition or combination of conditions of release can reasonably assure the safety of the community.  Brightman is charged with committing extremely serious and violent offenses against five victims.[3]  The Indictment sets forth repeated conduct by Brightman in

---

[3] The Court emphasizes that its description of the alleged conduct herein is based on the

which he deceived his victims, purporting to be a medical professional, and proceeded to kidnap and brutally attack them.  These allegations include Brightman kidnapping Victim-1 and Minor Victim-1 at knifepoint, binding and gagging Victim-2 while threatening to kill her, punching and choking Victim-3 and stalking her at work to dissuade her from reporting the attack, and holding Victim-4 hostage in her apartment where he repeatedly assaulted her until she escaped.  Indictment ¶ 2.  The details alleged in the Indictment underscore the danger to the community.

Brightman met Victim-1 over social media in November 2021 and they began a romantic relationship soon thereafter during which Brightman assaulted Victim-1 on multiple occasions.  *Id.* ¶ 8.  After Victim-1 ended their relationship in mid-July 2022, Brightman violently kidnapped Victim-1 and her two-year-old daughter, Minor Victim-1, forcing them at knifepoint to travel with him from their residence in New York to his residence in New Jersey.  *Id.* ¶ 9.  While there, Brightman threatened to kill Victim-1 if she caused any problems.  *Id.* ¶ 10.  He held Victim-1 and Minor Victim-2 against their will several hours, until Victim-1 was able to call the police.  *Id.*  The police responded, rescuing Victim-1 and Minor Victim-2.  *Id.*

Less than a year later, in May 2023, Brightman similarly connected with Victim-2 over social media, leading to a romantic relationship.  *Id.* ¶ 11.  A few months into that relationship, on August 7, 2023, Brightman held Victim-2 in her apartment in Queens against her will.  *Id.* ¶ 12.  Brightman bounded Victim-2's mouth with tape and threatened to kill her with a knife.  *Id.*; *see* Govt. Opp. at 1 ("[Brightman] held a knife to Victim-2's side and threatened to 'gut' her 'like a fish' . . . .").  On August 14, 2023, the day after Victim-2 ended their relationship, Brightman called her phone over twenty times.  Indictment ¶ 13.  When Victim-2 answered one of those calls, she told Brightman that she was afraid of him, to which Brightman responded by threatening Victim-2

allegations in the Indictment, which have not been proven.  Brightman remains presumed innocent unless and until the Government proves his guilty beyond a reasonable doubt.

5

with physical harm.  *Id.*

Also in August 2023, Brightman again used social media to enter into a romantic relationship with Victim-3.  *Id.* ¶ 14.  The two began to argue on September 2, 2023, at which point Victim-3 started to distance herself from Brightman.  *Id.* ¶ 15.  Four days later, on September 6, Brightman drove to the Bronx and called Victim-3 to lure her to his car.  *Id.* ¶ 16.  Brightman then held Victim-3 against her will, punching, choking, and strangling her.  *Id.*; Govt. Opp. at 1-2 ("[Brightman] attempted to strangle Victim-3 by putting her into a chokehold and using his other hand to cover her mouth and nose . . . .").  She was able to escape and ran back to her apartment building, where she called the police.  Indictment ¶ 16.  Five days later, on September 11, Brightman confronted Victim-3 at her workplace about whether she had called the police.  *Id.* ¶ 17.  Victim-3 once again tried to get away from Brightman, but he followed her back to her home, continuing to argue with her and assault her in the process.  *Id.*

Brightman also met Victim-4 over social media in August 2023 and they too began a romantic relationship.  *Id.* ¶ 18.  Toward the end of September 2023, Brightman and Victim-4 had an argument over text message, prompting Victim-4 to cease responding to Brightman and to block his telephone number.  *Id.* ¶ 19.  Several days later, on September 28, 2023, Brightman confronted Victim-4 in the Bronx.  *Id.* ¶ 20.  Brightman persuaded Victim-4 to let him into her residence, where he assaulted, strangled, chocked, and threatened to kill her.  *Id.*  She escaped by running away.  *Id.*[4]

There can be no question that Brightman's alleged conduct of violently attacking four women and a minor, poses a tremendous danger to the community, including to those five individuals as well as to potential future victims.  Most concerning, the Court has little confidence that Brightman would refrain from such conduct if released, even temporarily for one day.

---

[4] The Court has reviewed the audio recording of the bail argument before Judge Moses on December 11, 2023.  At that argument, the Assistant United States Attorney provided further troubling details of Brightman's alleged conduct against the victims.

According to the Government, Brightman was arrested after each of these events, yet proceeded to continue to target victims.  Govt. Opp. at 2.  Indeed, the Government represented at the bail argument before Judge Moses that Brightman engaged in the conduct involving Victim-2, Victim-3, and Victim-4 while on pretrial release following his arrest on state charges relating to his crimes against Victim-1 and Minor Victim-1.  This danger is particularly enhanced as to the five victims, as the allegations in the Indictment reveal that Brightman knows where several of them lived and what telephone numbers they used at the time of the alleged offenses, with the most recent offenses allegedly occurring only about six months ago.  *See also* Govt. Opp. at 3 ("Based on the Government's review of the defendant's jail calls, the defendant has enlisted family members in the past to track down and contact women on the defendant's behalf.").  The Court therefore concludes no condition or combination of conditions will guarantee the safety of the community.

The Court also finds that the Government has established, by a preponderance of the evidence, that no condition or combination of conditions would reasonably assure Brightman's future appearance in court if he were to be temporarily released.  If convicted, Brightman would face an extremely long period of incarceration.  Most significantly, Count One carries a mandatory minimum sentence of twenty years' imprisonment with a maximum term of life imprisonment.  *See* 18 U.S.C. § 1201(g).[5]  Two other Counts also carry maximum terms of imprisonment of life (Counts Four and Seven), while the other four Counts appear to have maximums term of imprisonment of five years assuming no statutory enhancements apply (Counts Two, Three, Five, Six, and Eight).

The Government also has proffered a strong case, which provides Brightman with further incentive not to appear.  The Government explains that its evidence "consists not only of witness testimony, but also of records that corroborates the witnesses' accounts, including text messages,

---

[5] Section 1201(g) provides for an enhanced penalty of a mandatory minimum sentence of twenty years if "the victim of an offense under this section has not attained the age of eighteen years."  18 U.S.C. § 1201(g)(1)(A).

recordings of phone calls, videos, and cellphone location information." Govt. Opp. at 2. In attacking the strength of the Government's proof, Brightman points to a plea offer that supposedly had been made in July 2023 by a state prosecutor in Hudson County, New Jersey, in connection with the conduct involving the alleged kidnapping of Victim-1 and Minor Victim-1, prior to the initiation of these federal charges. Deft. Mot. at 4-5, Exh. A. The United Attorney's Office is not bound by charging or plea-bargaining decisions of state prosecutors and, moreover, the Government represents that its case here "encompasses and far exceeds the purview of any one individual state case." Govt. Opp. at 2 n.1.[6]

For these reasons, the Government has shown by clear and convincing evidence that no condition or combination of conditions can reasonably assure the safety of the community, and further by a preponderance of the evidence that no condition or combination of conditions would reasonably assure Brightman's future appearance in court, even were he to be released temporarily. In reaching this conclusion, the Court has considered less restrictive alternatives to detention, including the proposal presented by Brightman, as well as any additions and enhancements that could be made to that proposal. But given the alleged conduct, which entailed violently brutalizing victims in relatively quick succession including while on pretrial release, electronic monitoring is unlikely to prevent further assaults or Brightman's escape, but rather would notify law enforcement of any noncompliance after the fact. And the proposed third-party custodian (whose ability to enforce compliance is unclear) and personal recognizance bond with co-signers are insufficient to overcome the concerns discussed above.

The Court expresses its condolences to Brightman for his loss and certainly understands his desire to join his loved ones for his father's funeral. But in the end, the Court concludes that his

---

[6] The risk of flight here is further enhanced by the allegation that Brightman took on a false persona as a medical professional when enticing his victims. *See* Govt. Opp. at 3 ("[F]or a year the defendant went by his alias 'Nazir Griffiths,' with fake jobs and fake IDs.").

application for temporary release must be denied on both danger to the community and risk of flight grounds.  The Court does believe, however, that best efforts should be made for Brightman's virtual participation in his father's funeral service.

On that point, the refusal of the Bureau of Prisons to accommodate Brightman's virtual attendance at his father's funeral from the MDC is disappointing, and its explanation to the Government is unpersuasive.[7]   According to the Government, the MDC's legal staff has acknowledged that it has the capability to arrange for virtual viewing, but as a matter of policy is resisting doing so in this case.   The MDC further advised the Government that "the only videoconference lines that inmates have access to are for attorney and court conferences, which are unmonitored lines."   Dkt. 20 at 1.   Apparently, the MDC's concern is with inappropriate communications that would be unmonitored.  Those concerns could have been addressed by having a staff member of the MDC monitor Brightman's virtual attendance at the funeral, or even by having Brightman's counsel, a member of the bar of this Court, join Brightman for the viewing.  The MDC apparently advised the Government that it lacks the staffing "to provide a staff member to monitor the videoconference line with the inmate."  *Id.*   The notion that the MDC is unable to have a staff member accompany Brightman for the brief duration of his virtual viewing of the funeral is difficult to accept.

The Court urges the parties to continue to explore options for Brightman's remote viewing of his father's funeral service.  They should advise the Court of whether it can be of assistance.

The Clerk of the Court is respectfully directed to close the motion at Docket Number 16.

---

[7] The Court also has reached out to legal counsel at the MDC, and similarly was advised that the jail would not, as a matter of policy, allow for Brightman's viewing by video of his father's funeral service.

SO ORDERED.

Dated: March 20, 2024
     New York, New York

JOHN P. CRONAN
United States District Judge